IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DeVORE FAMILY PARTNERSHIP LLP,   )
                                 )
                      Plaintiff, )
                                 ) Civil Action No.: 06 C 3484
v.                               )
                                 ) Suzanne B. Conlon, Judge
McDOUGAL LITTELL and             )
R.R. DONNELLEY & SONS CO.,       )
                                 )
                     Defendants. )

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

Three months after this copyright infringement lawsuit was filed for publication of 1.2 million copies of the late Nicholas DeVore's Mt. Everest photograph, defendants McDougal Littell, a Division of Houghton Mifflin Company, and its parent R.R. Donnelley & Sons, moved to stay all proceedings pending arbitration. The DeVore family opposes the motion, insisting that defendants waived any right to arbitration by their delay. Alternatively, the DeVore family contends that an arbitration provision in their 1998 licensing agreement is inapplicable because the agreement was automatically voided when defendants violated the copyright laws by exceeding the agreed 40,000 reproduction limit. After reviewing the parties' submissions, the court concluded there were disputed issues of fact concerning when defendants were reasonably on notice of the arbitration provision. Because the briefs raised serious factual and credibility issues, the court ordered a hearing and asked the parties to submit copies of the authorities cited during the arguments.

### FACTS

After considering the hearing testimony, exhibits and arguments, the court concludes that

most of the underlying facts are not disputed. On November 10, 1998, DeVore's agent, Tony Stone Images ("Tony Stone"), issued McDougal Littell a license to publish 40,000 copies of DeVore's Mt. Everest photograph, among others. Tony Stone prepared the license and a contemporaneous invoice on its own letterhead. At the court's request, defendants produced the original Tony Stone license and invoice for examination. The court noted that each of the two documents had a preprinted statement of terms and conditions on the reverse side, printed in grey ink. The two terms and conditions statements were identical; each contained the following provision:

> **22. Arbitration.** ANY AND ALL DISPUTES ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS CONTRACT, INCLUDING WITHOUT LIMITATION, THE VALIDITY, INTERPRETATION, PERFORMANCE AND BREACH HEREOF, SHALL BE SETTLED BY ARBITRATION IN THE CITY IN WHICH [TONY STONE IMAGES] IS LOCATED, PURSUANT TO THE RULES OF THE AMERICAN ARBITRATION ASSOCIATION.

Mot. to Stay at Ex. A (emphasis in original).

The original license and invoice have been in McDougal Littell's files at its business office in Evanston, Illinois since 1998. On May 24, 2006, the DeVore family's counsel sent a pre-litigation request to Houghton Mifflin's General Counsel, Paul Weaver, for the correspondence and license agreement pertaining to DeVore. Def. Ex. 1.[1] As a result, on the same day the request was made, Associate General Counsel Lois Novotny emailed a request to McDougal Littell's business office requesting "all paperwork" relating to the photos of the DeVore family "as soon as possible." Def. Ex. 2. The following morning, Novotny received a facsimile from McDougal Littell that included Tony Stone's 1998 license and invoice on behalf of DeVore. Def. Ex. 3. The reverse sides of both

---

[1] "Def. Ex." refers to defendants' exhibits received in evidence at the hearing.

documents, containing the preprinted terms and conditions, were not included. Carmine Fantasia, the Senior Art Resources Manager at McDougal Littell, was responsible for searching the files and sending the DeVore materials to Novotny. Fantasia testified that she did not include the terms and conditions pages because she did not think these preprinted documents were important.

There can be no serious dispute that Fantasia's response to Houghton Mifflin's request for "all paperwork" was inadequate and the cause of defendants' delay in seeking arbitration under the license agreement. Houghton Mifflin's legal team (in house and, later, outside counsel in this case) reasonably believed that McDougal Littell had furnished the complete DeVore file as requested.

When this case was filed on June 27, 2006, Weaver again requested Fantasia to "please pull the licenses (*sic*)" as soon as possible. Def. Ex. 5. Fantasia responded the same day that she had already faxed the license to Houghton Mifflin's in house legal team a month earlier; she did not mention her omission of the terms and conditions statements that contained the provision mandating arbitration. Def. Ex. 6. Consequently, Houghton Mifflin's PDF of the DeVore license "documentation" for outside counsel in this case omitted this significant information concerning the arbitration provision. Def. Ex. 7. It was not until Friday, September 8, 2006 at 6:09 p.m., in connection with preparation of responses to the DeVore family's request for production of documents, that Fantasia emailed the entire DeVore file, including a copy of the terms and conditions page containing the arbitration provision. Def. Ex. 11 at ML–DEVORE 0067. The document was not opened by Novotny until Thursday, September 14th; she testified she was out of the office due to the serious illness of a relative. On September 14th, outside counsel also sent an email to in-house counsel requesting the "missing . . . second page of the DeVore invoice from Tony Stone." Def. Ex. 12.

3

The court finds that until September 14, 2006, neither in-house nor outside counsel were aware of the arbitration provision. Eight days after learning of the provision, defendants filed a request for arbitration with the American Arbitration Association ("AAA"); two days thereafter, the present motion to stay was filed.

## ANALYSIS

### I. Waiver

The DeVore family argues that defendants constructively knew about the arbitration provision since 1998 because Tony Stone's license and invoice containing preprinted terms and provisions on the reverse sides were in McDougal Littell's business files. The DeVore family does not question in-house and outside counsels' good faith in representing they were unaware of the arbitration provision until September 2006. Rather, it is contended that counsels' lack of knowledge is immaterial; it is defendants' constructive knowledge that should be central to the waiver decision. This is the basis for the argument that defendants waived arbitration because they did not raise the issue until three months after the case was filed. Alternatively, the DeVore family asserts the delay between Fantasia's email that first included the arbitration provision on the evening of Friday, September 8th and the filing of the motion to stay on September 25th constitutes a lack of due diligence and waives any arbitration rights. The court cannot agree with either argument because neither takes all the facts and circumstances into consideration.

It is beyond dispute that a contractual right to arbitrate may be implicitly waived. *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 756 (7th Cir. 2002). In making a determination whether defendants have waived a right to arbitrate under the licensing agreement, the court must consider the totality of circumstances, not just one factor. *Id.* The proper inquiry is

4

whether defendants acted inconsistently with a right to arbitrate. *Id.* (citing *Grumhaus v. Comerica Sec., Inc.*, 223 F.3d 648, 650-51 (7th Cir. 2000). The DeVore family is correct to the extent they argue that lack of diligence weighs heavily among the factors to be considered. *Id.* As the court observed at the hearing, this is a close issue. But it is the DeVore family's burden to establish defendants have acted inconsistently with a right to arbitrate under all the circumstances involved.

The arbitration provision at issue was part of the license and invoice prepared by DeVore's agent, not defendants.[2] There is no evidence DeVore or Tony Stone negotiated this provision or called the preprinted terms and conditions to defendants' attention directly or by a note on the face of the contractual documents flagging the preprinted terms and conditions on the reverse sides of both documents. The license and invoice were then buried in McDougal Littell's business records in Evanston for ten years, until the present dispute arose in May 2006.

Houghton Mifflin's in-house counsel made diligent efforts to secure "all paperwork" relating to the DeVore license in May, June and September 2006. Although a non-legal McDougal Littell employee responded quickly to the requests, she made an error in judgment by deciding not to copying the "unimportant" reverse sides of the documents and failing to inform in-house counsel of their existence. In retrospect, more could have been done to insure the legal team had all DeVore documents. Nevertheless, the inadequacy of McDougal Littell's response, when considered in the context of all the circumstances, does not support a reasonable inference that defendants acted inconsistently with a right to arbitrate.

---

[2] At the hearing, the DeVore family suggested that in-house counsel should have specifically requested the reverse side of the licence agreement because in two recent cases with their same counsel, arbitration clauses were located there. Unlike this case, however, there were notations on the face of the licenses indicating terms and conditions were on the reverse.

5

Within two weeks after learning of the arbitration provision imposed by DeVore's agent, defendants demanded arbitration and then moved to stay this case. All of the circumstances strongly suggest defendants have acted with due–not perfect–diligence and have not acted inconsistently with the arbitration provision simply by responding to this litigation and filing a motion for partial dismissal of the damage claim.

The DeVore family contends it will be prejudiced by a stay of this case in favor of arbitration. However, it was *DeVore's agent*–not defendants–who interposed mandatory arbitration as part of the licensing agreement. In asserting prejudice, counsel for the DeVore family argues he was unaware of the terms and conditions of DeVore's license. This is curious in light of his contention that it is defendants' constructive knowledge–not their counsels' lack of information–that controls the due diligence analysis. The perfect due diligence standard advocated by the DeVore family would also require the family to show that it made every reasonable attempt to obtain a copy of DeVore's license and related documents from his own agent, or its successor, before incurring costs in filing and aggressively prosecuting this case. The fees and costs in this case were the result of the DeVore family's choices and risks. Prejudice cannot be reasonably inferred under these circumstances. Indeed, it may be inferred that all parties have incurred costs and fees as a result of the DeVore family's choice of this forum. Nor is there any reasonable basis to conclude that discovery disputes, arising after the motion to stay was filed, show defendants have acted in bad faith in choosing arbitration over litigation in this court.

For the foregoing reasons, the DeVore family has not established that defendants waived any rights to arbitration under the licensing agreement prepared by DeVore's agent.

## II. Applicability of the Arbitration Clause

This brings us to the DeVore family's argument that the arbitration clause is inapplicable because they are proceeding on an "independent" copyright infringement theory, not on a claim for breach of the DeVore license. This position ignores the broad, inclusive language used by DeVore's agent in the arbitration clause: "any and all disputes arising out of, under or in connection [with the licensing agreement] . . . shall be settled by arbitration . . . pursuant to the rules of the American Arbitration Association." Mot. to Stay at Ex. A. The AAA's Commercial Arbitration Rules provide that its arbiters have the power to decide jurisdictional issues, including those related to the existence, scope or validity or a purported arbitration agreement. AAA Rule R-7(a) (quoted in *Contec Corp. v. Remote Solution, Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005). Under the explicit terms and conditions of the licensing agreement, the DeVore family's argument that the arbitration provision is inapplicable to defendants' alleged copyright infringement of DeVore's Mt. Everest photograph may be submitted to the arbiter, but shall not be considered by this court.

## CONCLUSION

Defendants have not waived their right to arbitration under paragraph 22 of the terms and conditions of the DeVore licensing agreement. Any challenge to the applicability of the arbitration clause to the issues in this case must be resolved by the arbiter in conformity with AAA rules. Accordingly, defendants' motion for a stay of all proceedings in this case is granted.

ENTER:

Suzanne B. Conlon
United States District Judge

November 22, 2006